FILED

2022 Jan-13  AM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

-----------------------------------------------------------X
                                :

Wanda D. Trotman, *Sui Juris*          :

              Plaintiff,     :

                                :

        v.                    :

                                :

JAMES VON MOLTKE, individually, and in his   :
official capacity, DEUTSCHE BANK NATIONAL :
TRUST COMPANY, AMAN MARWAH,        :
individually, and in his official capacity, and   :
CARRINGTON MORTGAGE SERVICES, LLC  :

                                :

             Defendants.    :

                                :

-----------------------------------------------------------X

Case No.: 5:22-CV-45-MHH

JURY TRIAL DEMANDED

### COMPLAINT

COMES NOW Wanda D. Trotman, as Executrix of WANDA DENISE  MADDEN, Estate ("Estate") (hereinafter "Plaintiff"), an aggrieved party, appearing before this Court, specially and not generally, without waiving any rights, remedies or defenses, statutory or procedural, and hereby complains as follows.

### JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 – Federal Question, 28 U.S.C. § 1343 – Civil Rights and Elective Franchise and 28 U.S.C. § 1367 – Supplemental Jurisdiction.

2.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court as a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

## PARTIES

3.     Wanda D. Trotman is a Living Flesh and Blood, Breathing, self-aware, not deceased, Non-Corporate, Natural, Indigenous Woman and Sentient Being, Executrix of the Estate, and rightful owner of 5003 Greta Drive NW in Huntsville, Alabama ("Estate Property").

4.     Upon information and belief, Defendant JAMES VON MOLTKE ("Von Moltke"), at all times herein mentioned, is the Chief Financial Officer of DEUTSCHE BANK NATIONAL TRUST COMPANY ("Deutsche Bank") and is in charge of Deutsche Bank and all of the officers, agents, servants and employees under his control. Von Moltke is liable in this action under the doctrine of *respondeat superior*.

5.     Upon information and belief, Defendant Deutsche Bank, at all times herein mentioned, is a banking and financial institution with its principal place of business located at 60 Wall Street in New York, New York.

6.     Upon information and belief, Defendant Deutsche Bank, at all times herein mentioned, is organized and existing under the United States federal banking laws embodied in Title 12 of the United States Code ("U.S.C.") and the Uniform Commercial Code ("UCC"). The UCC is uniformly adopted in the State of Alabama and codified as Title 7 – Commercial Code ("Alabama Code").

7.     Upon information and belief, Defendant Deutsche Bank, at all times herein mentioned, is the alleged Indenture Trustee, acting as custodian, initial paying agent and note registrar for NEW CENTURY HOME EQUITY LOAN TRUST 2004-3 ("New Century Trust").

8.      Upon information and belief, Defendant AMAN MARWAH ("Marwah"), at all times herein mentioned, is the Chief Financial Officer of CARRINGTON MORTGAGE SERVICES, LLC ("Carrington") and is in charge of Carrington and all of the officers, agents, servants and employees under his control. Marwah is liable in this action under the doctrine of *respondeat superior*.

9.      Upon information and belief, Defendant Carrington, at all times herein mentioned, is the mortgage servicer for Deutsche Bank with its principal place of business located at 1600 S. Douglass Road in Anaheim, California.

## NATURE OF THE ACTION

10.     Plaintiff is a victim of mortgage fraud. Plaintiff recently discovered that, according to the National Currency Act, a bank is not allowed to loan its credit or its depositor's money.

11.     Plaintiff recently discovered that she, in fact, is the original creditor and lender, not the alleged borrower, in this alleged mortgage transaction, rightful owner of the Estate Property, and the real party in interest.

12.     Plaintiff recently discovered that she, in fact, did not receive a "loan" on July 23, 2004 to purchase the Estate Property.

13.     Plaintiff recently discovered that for ten (10) years, she had been paying Deutsche Bank and Carrington a monthly "mortgage" payment for an alleged debt obligation that she neither lawfully nor legally owed.

14.     WHEREFORE, Plaintiff brings this action for the recovery, in commerce, of such damages and costs for this mortgage fraud and prays for relief as set forth below.

## STATEMENT OF FACTS

**NEW CENTURY**

15.     On or about July 23, 2004, NEW CENTURY MORTGAGE CORPORATION ("New Century"), as alleged original creditor and lender, presented Plaintiff, as alleged borrower, with a 30-Year Adjustable Rate Note in the original principal amount of $220,000.00 – Plaintiff's "Genuine" Original Promissory Note ("Note") and a Security Instrument ("purported Mortgage") for the Estate Property, which is located at Lot 2, Block 5, according to the plat of Northgate subdivision, second addition, Huntsville, Alabama, and is commonly known and identified as 5003 Greta Drive NW, Huntsville, Alabama 35810.

16.     Plaintiff denies the authenticity of ALL days and/or ALL signatures by ALL parties on ALL documents, including without limitation, notarized documents, "contracts", "deeds", mortgages", "titles", "affidavits", and/or the like, including without limitation, the dates and/or signatures by notary publics, officers, employees, and any and ALL parties attesting to any and ALL claims, facts, accounting, transfers, recordings, publications, and/or the like, etc.

17.     Plaintiff observes that in paragraph 1 of the Note under subtitle, "BORROWER'S PROMISE TO PAY," it reads, **"In return for a loan that I have received**, I promise to pay U.S. $220,000.000 … plus interest, to the order of the Lender. The Lender is NEW CENTURY MORTGAGE CORPORATION." (Emphasis added.)

18.     Plaintiff denies that she was the recipient of any loan proceeds or any loan disbursement in any form whatsoever and rebuts the presumption that she was the recipient of any loan proceeds or any loan disbursement in any form whatsoever from New Century as of or on July 23, 2004.

19.     In spite of an intense search of all pertinent records, Plaintiff is unable to locate a loan disbursement confirmation or cash receipt or loan disbursement instructions in any form whatsoever from New Century of said alleged loan as of or on July 23, 2004.

20.     In spite of the fact that the Note asserts that she had already received a loan as of or on July 23, 2004, Plaintiff observes there is no evidence whatsoever that she actually received said loan from New Century as of or on July 23, 2004.

21.     In light of the lack of evidence that she actually received a loan from New Century, Plaintiff asserts that she did not receive a loan from New Century as of or on July 23, 2004.

22.     The purported Mortgage that secured the alleged loan was recorded in the Probate Office of Madison County, AL in Plat Book 10, Page 8 as Instrument No. 20040729000262880 on July 29, 2004. The Note was not and is not recorded with the purported Mortgage.

23.     On or about July 29, 2004, the Note and the purported Mortgage were separated and took two distinctly different paths.

24.     In early 2007, New Century, the defunct subprime lender, faced investigations on civil grounds by the Securities and Exchange Commission ("SEC") and on criminal grounds by the U.S. Attorney's Office in Los Angeles for mortgage fraud.

25.     On or about April 2, 2007, New Century filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware.

26.     On or about May 16, 2007, New Century's parent company, NEW CENTURY FINANCIAL CORPORATION ("NCFC"), announced that it conducted and concluded an auction at which hedge fund Carrington Capital Management, LLC, and Carrington Mortgage

Services, LLC ("the Carrington companies") submitted the highest bid and agreed to acquire New Century's loan servicing platform for $188 million.

27.     On or about March 26, 2008, an unsealed 581-page report, entitled "Final Report of Michael J. Missal, Bank Court Examiner," outlined a number of "significant improper and imprudent practices related to its [New Century's] loan originations, operations, accounting and financial reporting processes."

28.     On or about December 7, 2009, an action brought by the SEC sued three former executives of NCFC for securities fraud.

29.     In July 2010, said former executives agreed to pay $90 million in settlements.

**DEUTSCHE BANK**

30.     Deutsche Bank has a legacy of mortgage-related fraudulent practices. Plaintiff is one of thousands of victims of said mortgage-related fraudulent practices.

31.     On or about May 3, 2011, the Department of Justice ("DOJ") sued Deutsche Bank for at least $1 billion, saying the bank committed fraud and padded its pockets with undeserved income.

32.     On or about January 17, 2017, the DOJ announced a $7.2 billion settlement with Deutsche Bank resolving federal civil claims that Deutsche Bank misled investors in the packaging, securitization, marketing, sale and issuance of residential mortgage-backed securities ("RMBS") between 2006 and 2007.

33.     This $7.2 billion agreement represented the single largest RMBS resolution for the conduct of a single entity.  The settlement required Deutsche Bank to pay a $3.1 billion civil penalty under the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA).

Under the settlement, Deutsche Bank was also to provide $4.1 billion in relief to underwater homeowners, distressed borrowers and affected communities.

34.     According to Attorney General Loretta E. Lynch, "[t]his resolution holds Deutsche Bank accountable for its illegal conduct and irresponsible lending practices, which caused serious and lasting damage to investors and the American public. Deutsche Bank did not merely mislead investors: it contributed directly to an international financial crisis."

### COUNT I
### VIOLATION OF PLAINTIFF'S FEDERALLY PROTECTED RIGHTS GUARANTEED BY THE 13TH AMENDMENT TO THE CONSTITUTION

35.     Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

36.     The 13th Amendment to the Constitution prohibits slavery, involuntary servitude and peonage, declaring categorically, that they shall not exist in the United States, regardless of how the conditions are brought about.

37.     New Century, Deutsche Bank and Carrington deprived Plaintiff of her federally protected rights guaranteed by the 13th Amendment to the Constitution.

38.     From 2004 to 2007, New Century forced Plaintiff into involuntary servitude, under the looming threat of foreclosure, to make monthly "mortgage" payments for a debt she never owed.

39.     From 2007 to 2017, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington forced Plaintiff into involuntary servitude, under the looming threat of foreclosure, to make monthly "mortgage" payments for a debt she never owed.

40.     On or about June 20, 2017, Deutsche Bank and Carrington illegally and unlawfully foreclosed on the Estate Property for non-payment of a debt Plaintiff never owed.

41.     As a result of New Century, Deutsche Bank and Carrington's mortgage fraud and extortion, Plaintiff was forced into slavery, involuntary servitude and peonage for thirteen (13) years making monthly "mortgage" payments initially to New Century and subsequently to Deutsche Bank directly and/or by and through its mortgage servicer, Carrington, for a debt she never owed.

42.     New Century, Deutsche Bank and Carrington's mortgage fraud and extortion severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

43.     WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such violation of Plaintiff's federally protected rights guaranteed by the 13th Amendment to the Constitution under the protective mantle of 42 U.S.C. § 1983 and prays for relief as set forth below.

### COUNT II
### VIOLATION OF 12 U.S.C. § 1831N(A)(2)(A)
### GENERALLY ACCEPTED ACCOUNTING PRINCIPLES (GAAP)

44.     Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

45.     On or about January 1, 2007, New Century was the largest independent provider of subprime mortgages in the United States with a market capitalization of $1.75 billion.

46.     As a mortgage banker, New Century was governed by the banking laws embodied in Title 12 of the U.S.C.

47.     On or about July 23, 2004, New Century violated 12 U.S.C. § 1831n(a)(2)(A) – Uniform accounting principles consistent with GAAP.

48.     In violation of GAAP, New Century failed to follow the matching principle when depositing Plaintiff's Note.

49.     In further violation of GAAP, New Century failed to credit Plaintiff's account in accordance with the matching principle, showing a liability against its books and showing that New Century, in fact, owed Plaintiff "money", as the Note it deposited was her asset.

50.     In further violation of GAAP, New Century failed to provide Plaintiff with a loan disbursement confirmation or cash receipt or loan disbursement instructions for the alleged loan.

51.     Instead, New Century stole Plaintiff's Note that created the "money" and returned the "created money" to Plaintiff as an alleged loan to be repaid with interest, unjustly enriching itself.

52.     On or about July 23, 2004, New Century failed to fully disclose to Plaintiff that, according to the bookkeeping entries pursuant to GAAP, the Estate Property was paid in full.

53.     In discovery, Plaintiff will request a certified Life of Loan accounting for the alleged loan, including, but not limited to, the account and general ledger statement showing the full accounting of the alleged obligation, such as FR 2046 balance sheet (OMB #'s 2046, 2049, 2099), 1099 OID report, S-3/A registration statement, 424-B5 prospectus, RC-S & RC-B call schedules.

54.     This certified Life of Loan accounting will prove, beyond any shadow of a doubt, that New Century never lent Plaintiff any of its own pre-existing money, credit, or assets as consideration to purchase the Note or the alleged loan agreement from Plaintiff and that there is no actual debt obligation.

55.     Additionally, Plaintiff will request Form 1066 – U.S. Real Estate Mortgage Investment Conduit (REMIC) Income Tax Return – filed by New Century from 2005 to 2007 and filed by Deutsche Bank from 2007 to 2017.

56.     According to government expert witness, Walker F. Todd, whose affidavit is annexed hereto as Exhibit A and made part herein of this complaint by this reference, if New Century did, in fact, follow GAAP as required by law, the bookkeeping entries will show that Plaintiff is the creditor on the payables side of the ledger and New Century is, in fact, the debtor.

57.     If New Century did, in fact, follow GAAP as required by law, the party who funded the alleged loan, Plaintiff, should be repaid the money.

58.     If New Century did, in fact, follow GAAP as required by law, Deutsche Bank and Carrington have been extorting money from Plaintiff for ten (10) years in violation of federal law.

59.     If New Century did not follow GAAP as required by federal law, it violated federal law and Deutsche Bank and Carrington have been extorting money from Plaintiff for ten (10) years in violation of federal law.

60.     Deutsche Bank is a banking and financial institution governed by the banking laws embodied in Title 12 of the U.S.C.

61.     New Century's deceptive non-GAAP practices and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's non-GAAP practices severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's

credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

62.     WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such violation of uniform accounting principles consistent with GAAP pursuant to 12 U.S.C. § 1831n(a)(2)(A) and prays for relief as set forth below.

## COUNT III
## VIOLATION OF RULE 10B-5
## OF THE SECURITIES AND EXCHANGE ACT OF 1934

63.     Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

64.     On or about July 23, 2004, New Century stole, materially altered and illegally converted the Note and unjustly enriched itself. (Exhibit B)[1]

65.     New Century failed to disclose its intent to steal, materially alter and illegally convert the Note and unjustly enrich itself in the alleged loan agreement.

66.     On or about September 29, 2004, New Century sold, bundled and pooled ("securitized") the Note into the New Century Trust, a Real Estate Mortgage Investment Conduit ("REMIC").

67.     A REMIC is a corporation, trust, partnership or a segregated pool of assets that qualifies for special tax treatment under the Internal Revenue Code of 1986 ("IRC").

68.     REMIC's are treated as pass-through vehicles for tax purposes helping avoid double taxation.

69.     If the trust, trustee or servicer acting on behalf of the trust violates the very strict guidelines to qualify as a REMIC, the taxable status is revoked.

---

[1] This document is a counterfeit security, pursuant to 18 USC §§ 472 and 473. It was admitted as evidence in the Circuit Court of Madison County Case No. 47 CV-2017-000046 by Robert J. Solomon, the attorney of record for Deutsche Bank and Carrington, and is evidence of an ongoing criminal act.

70.     Pursuant to Section 860 of the IRC, any mortgage note/asset identified for inclusion in a trust seeking a REMIC status MUST be deposited in the trust within the three (3) month time period calculated from the official startup day of the REMIC.

71.     The written agreement that created and governs the New Century Trust is a Master Pooling and Servicing Agreement ("PSA"), which is filed under oath with the SEC and is a matter of public record.

72.     Terms and conditions of the New Century Trust may also be found in a Prospectus Supplement and an Amended and Restated Trust Agreement, which are also filed under oath with the SEC and are a matter of public record.

73.     The Note, once securitized, became property of the New Century Trust, on or about September 29, 2004 ("the closing date"), in compliance with the requirements set forth in the PSA.

74.     As required in the mandatory rules and procedures for sales and transfers found in the PSA, on or about the closing date, the Depositor, NEW CENTURY MORTGAGE SECURITIES, INC. ("NCMS"), physically transferred the Note to the REMIC.

75.     According to the Prospectus Supplement, dated September 27, 2004, under subtitle, "THE TRUST," "[o]n the closing date, the depositor will deposit the mortgage loans into the trust."

76.     According to Article 3, Section 3.01 of the Amended and Restated Trust Agreement, dated September 29, 2004, under subtitle, "CONVEYANCE OF THE MORTGAGE LOANS," NCMS, the depositor, "[c]oncurrently with the execution and delivery hereof, **does hereby contribute, transfer, convey and assign to the Trust,** or on behalf of the Holders of the

Notes and the Certificates, without recourse, **all its right, title and interest to and in the Mortgage Loans**…." (Emphasis added.)

77.     On or about September 29, 2004, the Note was converted into a trade-able security ("Securitized Note") as it was under the subject of transmittal or reference, in exchange for which the "lender", whose name appears on the Note and Mortgage, New Century or the Trustee named as the nominal title holder, taking title pursuant to the Trust Agreement with the "lender", Deutsche Bank, **received both full payment of the entire principal of the Note and a premium of approximately 2.5% of the entire loan balance**.

78.     Once New Century securitized the Note on September 29, 2004, New Century was, once again, paid in full.

79.     Pursuant to the "RELEASE" clause, paragraph 23 of the purported Mortgage, "[u]pon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument."

80.     New Century failed, refused or neglected to release the Security Instrument "upon payment of all sums" but rather continued in the perpetuation of its fraudulent acts.

81.     Prior to September 29, 2004, the Note was a negotiable instrument, pursuant to and governed by Article 3 of the Alabama Code, secured by the purported Mortgage.

82.     Once New Century securitized the Note on September 29, 2004, it was no longer a negotiable instrument pursuant to and governed by Article 3 of the Alabama Code.

83.     After September 29, 2004, the Securitized Note was an investment security, pursuant to and governed by Article 8 of the Alabama Code and the SEC. Such event would indicate that the Note ceased to exist.

84.     Once the Note was converted into a stock, or stock equivalent, that event would indicate the Note is no longer a Note but an investment security.

85.     Deutsche Bank and Carrington contend that the Note and the Securitized Note exist at the same time.

86.     If both the Note and the Securitized Note exist at the same time, Deutsche Bank and Carrington are double dipping, which is securities fraud.

87.     On or about June 20, 2017, the day on which Deutsche Bank and Carrington illegally and unlawfully foreclosed on the Estate Property, Deutsche Bank and Carrington assert that Deutsche Bank was, in fact, the holder in due course of the Note.

88.     Once New Century deposited the Note on or about July 23 2004, such event would indicate that New Century was not the holder in due course.

89.     On or about March 16, 2007, in violation of the PSA, New Century fraudulently conveyed its "right, title and interest" in the purported Mortgage to Deutsche Bank as Trustee for Carrington Mortgage Loan Trust, Series 2004-NC2 ("Carrington Trust"). No good title passes with theft.

90.     On or about April 13, 2013, in further violation of the PSA, Deutsche Bank as Trustee for the Carrington Trust fraudulently conveyed its "right, title and interest" in the purported Mortgage to Deutsche Bank as Indenture Trustee for the New Century Trust. No good title passes with theft.

91.     On or about June 20, 2017, the day on which Deutsche Bank and Carrington illegally and unlawfully foreclosed on the Estate Property, Deutsche Bank and Carrington assert that Deutsche Bank was, in fact, the person entitled to enforce the instrument.

92.     Once New Century securitized the Note, such event would indicate that the original "lender", New Century, had been paid in full. Therefore, Deutsche Bank, cannot claim that it is a real party of interest, the holder in due course or the person entitled to enforce the instrument.

93.     Pursuant to the Alabama Code and the strict regulations of the PSA that governs the New Century Trust, Deutsche Bank and Carrington could not possibly have been in possession of the Note on June 20, 2017 when they illegally and unlawfully foreclosed on the Estate Property.

94.     The purported Mortgage enforced the Note and provided the capability for Deutsche Bank to foreclose on the property.

95.     Once the Note was securitized, such event would indicate the purported Mortgage loses its security component as the Note that it alleged security no longer exists.

96.     Once the Note was securitized, such event would indicate that the right to foreclose through the purported Mortgage is forever lost.

97.     Thus, the purported Mortgage cannot enforce the Note if 1) the Note no longer exists and 2) the purported Mortgage is not itself a legally enforceable instrument.

98.     Additionally, if the purported Mortgage and the Note were separated and not together with the same entity, foreclosure cannot legally or lawfully occur.

99.     On or about June 20, 2017, the purported Mortgage and the Note were not together with Deutsche Bank and/or Carrington so there could be no legal enforcement.

100.    On or about June 20, 2017, Deutsche Bank and Carrington illegally and unlawfully foreclosed on the Estate Property as they were not in possession of the Note and the purported Mortgage.

101.  Deutsche Bank and Carrington cannot assert that the Note was lost as it is clear that the Note was destroyed on or about September 29, 2004 when the Note was securitized.

102.  Deutsche Bank, Carrington, Mortgage Electronic Registration System, McCalla Raymer Leibert Pierce LLC, W. Brennan Rutledge, Solomon Baggett LLC, Robert J. Solomon, Foreclosure Services of Alabama, Inc. and Marcus Clark are complicit in the fraudulent foreclosure proceeding for the sale of the Estate Property that occurred on June 20, 2017.

103.  All "investors" involved in the securitization of the Note MUST be joined by Defendants in any rebuttal, response, reply, answer and/or the like by Defendants as they are indispensable parties.

104.  According to the SEC Electronic Data Gathering, Analysis and Retrieval System ("EDGAR"), on or about September 30, 2004, New Century filed a 424-B5 prospectus for the New Century Trust.

105.  All filings for the New Century Trust, including, but not limited to the 424-B5 prospectus are a matter of public record, filed under oath with the SEC and can be found on EDGAR (https://www.sec.gov/edgar/browse/?CIK=0001304838 ).

106.  On or about January 26, 2005, Katherine Wannemacher, Vice President at Deutsche Bank, completed Form 15-15D, to suspend reporting obligations to the SEC for the New Century Trust. (Exhibit C)

107.  In violation of federal law and the PSA, New Century and Deutsche Bank and/or Carrington failed to preserve the tax-exempt status of the New Century Trust as a REMIC.

108.  Form 1066 requires that "[a]n entity files this form to report: the income, deductions, and gains and losses from the operation of a real estate mortgage investment conduit (REMIC)."

109.   Plaintiff has not seen or been presented with any evidence that New Century filed Form 1066, as required by law, for the New Century Trust in 2005 or thereafter and believes no such evidence exists.

110.   Plaintiff has not seen or been presented with any evidence that Deutsche Bank and/or Carrington has filed Form 1066, as required by law, for the New Century Trust since 2007 and believes no such evidence exists.

111.   Form 8811 – Information Return for Real Estate Mortgage Investment Conduits (REMICs) and Issuers of Collateralized Debt Obligations – requires that "[a] REMIC or issuer of a CDO (defined in Regulations section 1.6049-7(d)(2)) uses Form 8811 to provide information required by Regulations section 1.6049-7(b)(1)(ii) to be published in the directory of REMICs and issuers of CDOs, Pub. 938, Real Estate Mortgage Investment Conduits (REMICs) Reporting Information (And Other Collateralized Debt Obligations (CDOs))."

112.   Under "*Who Must File*", it states, "Form 8811 must be filed by entities that elect to be treated as a REMIC and by issuers of CDOs."

113.   Under "*When To File*", it states, "File Form 8811 no later than 30 days after the startup day of the REMIC or issue date of the CDO."

114.   Internal Revenue Service ("IRS") Publication 938 contains directories relating to REMICs and CDOs for each calendar quarter based on information submitted to the IRS on Form 8811 for that quarter.

115.   Based on the 424-B5 filing, New Century should have filed Form 8811 for the New Century Trust in the first quarter of 2005 for publication in Publication 938.

116.    Plaintiff has not seen or been presented with any evidence that New Century filed Form 8811 for the New Century Trust in the first quarter (or subsequent quarters) of 2005 and believes no such evidence exists.

117.    Plaintiff has not seen or been presented with any evidence that Deutsche Bank and/or Carrington has filed Form 8811 for the New Century Trust since 2007 and believes no such evidence exists.

118.    Attached, as Exhibit D, is an excerpt of Publication 938 for the four quarters of 2005. The full publication can be found at https://www.irs.gov/pub/irs-prior/p938--2005.pdf. This 2005 edition of the publication was revised on March 2006.

119.    The New Century Trust has not been listed in the Directory of REMICs and other CDOs in IRS Publication 938 since 2005.

120.    Deutsche Bank and Carrington have committed securities fraud and tax fraud in this alleged mortgage transaction.

121.    Plaintiff will file FINCen Form 101a to alert the Financial Crimes Enforcement Network of Deutsche Bank and Carrington's fraud in this alleged mortgage transaction.

122.    Plaintiff will file Form 3949-A to alert the IRS of Deutsche Bank and Carrington's tax fraud in this alleged mortgage transaction.

123.    New Century created the New Century Trust for the tax benefits REMICs provide yet failed to preserve the tax-exempt status of the New Century Trust and failed to adhere to the strict regulations of the PSA that governs the New Century Trust.

124.    In furtherance of such fraudulent acts, Deutsche Bank and Carrington have facilitated New Century's failure to preserve the tax-exempt status of the New Century Trust and its failure to adhere to the strict regulations of the PSA that governs the New Century Trust.

125.    Since July 2004, New Century illegally and unlawfully extorted monthly "mortgage" payments from Plaintiff.

126.    Since May 2007, after New Century filed for bankruptcy, Deutsche Bank and Carrington have illegally and unlawfully extorted monthly "mortgage" payments from Plaintiff in the name of the New Century Trust.

127.    Since May 2007, Deutsche Bank and Carrington have maintained the illusion that 1) the New Century Trust is a valid REMIC and 2) there is a debt due.

128.    Defendants are fully aware that the New Century Trust is no longer a valid REMIC and that Deutsche Bank and Carrington are illegally and unlawfully extorting monthly "mortgage" payments for a "phantom" trust.

129.    In furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington have maintained the illusion that Deutsche Bank is the holder in due course of Plaintiff's Note, when in fact, Deutsche Bank is fully aware that once New Century deposited the Note, there is no holder in due course.

130.    In furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington have maintained the illusion that Deutsche Bank is the holder in due course of Plaintiff's Note, when in fact, Deutsche Bank is fully aware that Plaintiff's Note was destroyed during the securitization process.

131.    In furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington have maintained this illusion in order to extort monthly "mortgage" payments from Plaintiff for ten (10) years.

132.    Defendants are fully aware that there is no debt due as (1) New Century was paid the full value of the Note multiple times beginning on or about July 23, 2004 and (2) Deutsche Bank has been paid the full value of the Note multiple times since May 2007.

133.    New Century violated Rule 10B-5 when it made false "representations, warranties and covenants to the depositors relating to, among other things, the due execution and enforceability of the pooling and servicing agreement, and certain characteristics of the mortgage loans."

134.    New Century violated Rule 10B-5 when it made false representations that, prior to the sale of the related mortgage loans to the depositors, New Century had good title to the mortgage loans sold by it, was the sole owner of those mortgage loans free and clear of any pledge, lien, encumbrance or other security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign those mortgage loans pursuant to the pooling and servicing agreement.

135.    New Century sold the Note shortly after they stole the Note. No good title passes with theft.

136.    New Century is not the "creditor" in this alleged mortgage transaction. A "creditor" cannot be a creditor if they don't hold the assets in question, i.e. the Note.

137.    New Century did not hold the assets in question because it sold and the New Century Trust purchased and destroyed the Note.

138.    If Von Moltke and Marwah maintain that New Century is the "creditor" in this alleged mortgage loan transaction then Von Moltke and Marwah admit that New Century followed GAAP, as required by law.

139.    If Von Moltke and Marwah admit that New Century followed GAAP then Von Moltke and Marwah concede that Plaintiff is the "creditor" in this alleged mortgage loan transaction and the only debt due is to Plaintiff for the theft of her Promissory Note by New Century and from the extorted monthly "mortgage" payments by Deutsche Bank and Carrington.

140.    If Von Moltke and Marwah maintain that New Century is the "creditor" in this alleged mortgage loan transaction there is no debt due as New Century is not the holder in due course.

141.    If Defendants refuse to stipulate in open court, under penalty of perjury, that New Century is the "creditor" in this instant matter, Defendants agree to accept Judgment by Default in favor of Plaintiff.

142.    If Von Moltke and Marwah maintain that Deutsche Bank is holder in due course of Plaintiff's Note, Von Moltke must inform the SEC and the IRS of Deutsche Bank's status as "creditor" and "holder" in due course.

143.    If Von Moltke and Marwah maintain that the New Century Trust is, in fact, "holding" the Note as an asset, the tax-exempt status of the New Century Trust is breached, the New Century Trust is void *ab initio* and Von Moltke must inform the SEC and the IRS of Deutsche Bank's status as "creditor" and "holder" in due course. Mortgage Pass-Through Trusts cannot hold assets.

144.    If Von Moltke and Marwah maintain that Deutsche Bank is, in fact, the person entitled to enforce the instrument and the holder in due course of the instrument, Deutsche Bank and Carrington are committing securities fraud as the Note and the Securitized Note cannot exist simultaneously.

145.    If Von Moltke and Marwah maintain that Deutsche Bank is, in fact, the person entitled to enforce the instrument and the holder in due course of the instrument, Deutsche Bank and Carrington are committing tax fraud as the New Century Trust is void.

146.    If Deutsche Bank is not the holder in due course, then it is not the person entitled to enforce the instrument and Deutsche Bank and Carrington have extorted monthly "mortgage" payments from Plaintiff for ten (10) years, illegally and unlawfully foreclosing on the Estate Property on June 20, 2017.

147.    Under United States laws, securitization is illegal because it is fraudulent and causes specific violations of RICO, including, but not limited to, mail fraud, wire fraud, financial institution fraud, engaging in monetary transactions improperly derived from specified unlawful activity, (i.e., 'the money you make from the illegal exploitation of my money, is my money') and racketeering, usury and antitrust laws.

148.    New Century securitized the Note and transferred all of its liabilities off its' balance sheet.

149.    After stealing and selling the Note, instead of showing it on their balance sheet, New Century did off-balance sheet bookkeeping. In other words, New Century's books are not showing the liability side of the ledger or accounts payable because they have moved it over to another entities balance sheet.

150.    Through securitization, New Century sliced and diced the Note through financial alchemy. But in that process, New Century neglected the most elemental part of this entire process, which is maintaining the chain of ownership on the alleged loan by physically documenting transfers from one entity to another.

151.    New Century committed securities fraud and tax fraud and, in furtherance of such fraudulent acts, Deutsche Bank and Carrington facilitated in the continuation of said securities fraud and tax fraud, extorting monthly "mortgage" payments from Plaintiff for the New Century Trust that has been void since 2005.

152.    New Century's deceptive sale of securities and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's deceptive sale of securities severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

153.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such deceptive sale of securities in violation of Rule 10B-5 in the Securities and Exchange Act of 1934 and prays for relief as set forth below.

## COUNT IV
## VIOLATION OF SECTION 7-3-407
## OF THE UNIFORM COMMERCIAL CODE OF ALABAMA

154.    Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

155.    Deutsche Bank and Carrington, by and through its attorney of record, Robert J. Solomon, in the Circuit Court of Madison County Case No. 47 CV-2017-000046, admitted evidence of an ongoing criminal act. (*See* Exhibit B)

156.    Plaintiff observes that there was no stamp on any signature pages in the mortgage documents she received on or about July 23, 2004.

157.    Plaintiff observes that the "copies" submitted as evidence in the above-mentioned case were not the same as the original "copies" she received at closing.

158.    On or about July 23, 2004, after the closing, New Century added an "allonge" to the Note on the page following the signature pages.

159.    Magda Villanueva, an alleged Assistant Vice President at New Century, endorsed the allonge on the Note.

160.    Plaintiff denies the authenticity of ALL days and/or ALL signatures by ALL parties on ALL documents, including without limitation, notarized documents, "contracts", "deeds", mortgages", "titles", "affidavits", and/or the like, including without limitation, the dates and/or signatures by notary publics, officers, employees, and any and ALL parties attesting to any and ALL claims, facts, accounting, transfers, recordings, publications, and/or the like, etc.

161.    This material alteration turned the Note into a "draft" or "money", an asset to resell or assign to another lender, debt collector, manager, servicer.

162.    The Note is fabricated and forged. No good title passes with a forged document.

163.    Pursuant to Section 7-3-407(b) of the Alabama Code, this fraudulent material alteration discharges Plaintiff.

164.    New Century's material alteration and illegal conversion of the Note and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's material alteration and illegal conversion severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

165.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such violation of the Section 7-3-407 of the Alabama Code and prays for relief as set forth below.

## COUNT V
## FRAUD IN THE INDUCEMENT

166.    Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

167.    On or about July 23, 2004, New Century led Plaintiff to believe that it was a creditor and a lender "lending" Plaintiff its own pre-existing "money" and/or that of its depositors to purchase the Estate Property.

168.    New Century falsely represented itself to Plaintiff as a creditor and a lender when it induced Plaintiff into completing an alleged "loan" application to secure an alleged "loan" to purchase the Estate Property.

169.    Plaintiff denies the authenticity of the signature on the alleged "loan" application.

170.    New Century was fully aware when it made this false representation that, (1) it was not "lending" Plaintiff its own pre-existing "money" and/or that of its depositors and (2) Plaintiff's signature created the "money" it used to fund the alleged loan.

171.    New Century knowingly made this false representation with the intent to induce Plaintiff to consent to signing the alleged loan documents so that it could steal the Note.

172.    Plaintiff was unaware at that time, and rebuts the presumption that she was aware, that, New Century was not actually "lending" her any of its own pre-existing "money" and/or that of its depositors and relied upon New Century's false representation.

173.    Plaintiff recently became aware that New Century did not actually "lend" her any of its own pre-existing "money" and/or that of its depositors through her own due diligence.

174.    According to *Modern Money Mechanics*, published by the Federal Reserve Bank of Chicago, "[t]hey (banks) do not really make loans out of the money they receive as deposits … what they do when they make loans is to accept promissory notes in exchange for credits they make to the borrowers' deposit accounts." (1961, page 6)

175.    According to *I Bet You Thought*, published by the Federal Reserve Bank of New York, "[c]ommercial banks create checkbook money whenever they grant a loan, simply by adding new deposit dollars to accounts on their books in exchange for a borrower's IOU." (December 1977, page 19)

176.    According to *Money, Banking & Monetary Policy*, published by the Federal Reserve Bank of Dallas, "[b]anks actually create money when they lend it." (May 2007, page 11)

177.    According to *Your Money and the Federal Reserve System*, published by the Federal Reserve Bank of Minneapolis, "[a] promise to pay has, in fact, created new spending money." (1959, 1960, page 9)

178.    According to *Money and Banking*, "[m]ost people suppose that a bank lends the deposits of its customers. In fact, however, no bank ever lends deposits." (6th Ed. 1976, page 144)

179.    New Century's false representation and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's false representation severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

180.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such fraud in the inducement and prays for relief as set forth below.

## COUNT VI
## FRAUD IN THE FACTUM

181.    Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

182.    On or about July 23, 2004, New Century, as alleged lender and creditor, failed to fully disclose the terms and conditions of the alleged loan agreement to Plaintiff.

183.    Plaintiff denies that she had reasonable opportunity to obtain knowledge of the terms and conditions of the alleged loan agreement.

184.    New Century's use of "legalese" in the Mortgage documents as a means of converting the Estate Property from its true owner, Plaintiff, to New Century is a criminal act of "conversion through fraudulent means" and therefore the Mortgage documents are evidence of a criminal act and cannot be used by this court in this matter.

185.    It is a functional impossibility for Plaintiff to "understand" the Mortgage documents New Century used in their unlawful attempt to convert the Estate Property to New Century's possession.

186.    Plaintiff's inability to "understand" the "legalese" used by the attorneys who wrote the Mortgage documents prohibits Defendants from using said documents as evidence against Plaintiff.

187.    New Century failed to fully disclose the material fact that it was not "lending" Plaintiff its own pre-existing "money" and/or that of its depositors, with the intent to induce Plaintiff into signing the alleged loan documents.

188.    New Century failed to fully disclose the material fact that Plaintiff's signature created the "money" it used to fund the alleged loan.

189.   Relying on New Century's false representation that it was "lending" her its own pre-existing "money" and/or that of its depositors to purchase the Estate Property, Plaintiff completed an alleged "loan" application.

190.   Plaintiff observes that, in spite of the fact that the Note asserts that she had already received a loan as of July 23, 2004, Plaintiff was not the recipient of any loan proceeds or loan disbursement instructions or loan disbursement confirmation or receipt of said loan from New Century of said alleged loan in any form whatsoever on or as of July 23 2004.

191.   New Century failed to fully disclose its intent to materially alter and illegally convert the Notes into a "draft" or "money".

192.   New Century failed to fully disclose its intent to create an account for Plaintiff without her knowing and voluntary consent to deposit (credit) the Note as a cash item aka "money".

193.   New Century failed to fully disclose its intent to return said "money" to Plaintiff as an alleged loan to be repaid, with interest, and unjustly enrich itself.

194.   New Century failed to fully disclose its intent to steal the Note and unjustly enrich itself.

195.   New Century failed to fully disclose its intent to securitize the Note and unjustly enrich itself.

196.   New Century failed to fully disclose the true meaning, among other things, of the "legalese" found under the "BORROWER COVENANTS" clause in the purported Mortgage.

197.   New Century had a duty to fully disclose the terms and conditions of the "legalese" weaved throughout the fabric of the alleged loan agreement to Plaintiff.

198.    Plaintiff herein disavows any and ALL implied and/or conferred and/or inferred "understanding" of "legalese" now and at the time of "signing" of any and ALL documents pertaining to the alleged loan and alleged mortgage transaction.

199.    New Century's failure to fully disclose and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's failure to fully disclose severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

200.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such fraud in the factum and prays for relief as set forth below.

## COUNT VII
## FRAUDULENT CONVEYANCE

201.    Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

202.    On or about March 16, 2007, in clear violation of the PSA, New Century transferred assigned, set over and fraudulently conveyed "all right, title and interest of said Assignor … covering property described in said Mortgage, **together with the note…**" to Deutsche Bank as Trustee for the Carrington Trust.

203.    Frank Mercado, Jr., who signed the document stating his position as Vice President of New Century, assigned the purported Mortgage to the wrong trust.

204.    On or about June 7, 2007, said Assignment of Mortgage was filed for record in Instrument Number 20070607000322090 in the Probate Office of Madison County, AL.

205.   This fraudulent assignment occurred approximately three (3) years after loan origination, a clear violation of the PSA.

206.   On or about April 13, 2013, Deutsche Bank "as trustee for Carrington Mortgage Loan Trust, Series 2004-NC2 … acting herein by and through a duly authorized officer, **the owner and holder of one certain Promissory Note** … does hereby transfer and assign, set over and deliver to Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Equity Loan Trust 2004-3 … all of its interest and title to said Mortgage, **together with the Note…**"

207.   On May 14, 2013, said Assignment of Mortgage to Deutsche Bank as Trustee for the New Century Trust, was filed for record in Instrument Number 20130514000316790 in the Probate Office of Madison County, AL.

208.   The signer, Elizabeth A. Ostermann, Vice President of Deutsche Bank, misrepresented herself as an Assignor representative without disclosure of Assignee agent employment.

209.   This fraudulent assignment occurs approximately six (6) years after the previous fraudulent assignment and nine (9) years after the closing date, a clear violation of the PSA.

210.   Defendants contend that Deutsche Bank became entitled to enforce the Mortgage in place of New Century as a result of these fraudulent assignments.

211.   Plaintiff contends that New Century fraudulently conveyed its "rights, title and interest" to Deutsche Bank.

212.   Plaintiff, reiterating the aforementioned items under Count III, particularly items 93 to 100, contends that New Century had no "rights, title or interest" to convey.

213.    New Century's fraudulent conveyance, and in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's fraudulent conveyance, severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

214.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such fraudulent conveyance and prays for relief as set forth below.

**COUNT VIII**
**BREACH OF AGREEMENT**

215.    Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

216.    New Century breached the alleged loan agreement when it attached the allonge to the Note, materially altering and illegally converting said Note.

217.    New Century breached the alleged loan agreement when it failed to fully disclose the true meaning of the "legalese" found under the "BORROWER COVENANTS" clause.

218.    Plaintiff was unaware, and rebuts the presumption that she was aware, that New Century intended to steal her Promissory Note and then attempt to steal the Estate Property.

219.    According to paragraph 16 of the purported Mortgage "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which Property is located."

220.    According to paragraph 11 of the Note, "This Note is governed by federal law and the law of the jurisdiction, in which Property encumbered by the Security Instrument is located."

221.    New Century breached the alleged loan agreement when it caused Plaintiff to waive her rights, in violation of federal and State law. (*See* "WAIVERS" clause in paragraph 24 of the purported mortgage and paragraph 10 of the Note)

222.    New Century breached the alleged loan agreement when it failed, refused or neglected to re-convey the Estate Property to Plaintiff, the Living Woman legally entitled to it, pursuant to the purported mortgage under the "RELEASE" clause which clearly states: "[u]pon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument."

223.    New Century and Deutsche Bank have been paid multiple times since 2005 and 2007, respectively, for the Estate Property, including, but not limited to, the recent "balancing of the books," on or about September 17, 2021.

224.    Plaintiff is aware of at least three times where New Century received "payment of all sums" for the Estate Property: (1) when New Century stole the Note and used it to create the "money" which it returned to Plaintiff as an alleged loan on or about July 23, 2004; (2) when New Century monetized Plaintiff's stolen Promissory Note to the tune of approximately $2.2 million on or about July 23, 2004; and (3) when New Century securitized the Note on or about September 29, 2004.

225.    According to *Modern Money Mechanics*, published by Federal Reserve Bank of Chicago, "…[t]hrough stage after stage of expansion 'money can grow to a total of 10 times the new reserves supplied to the banking system.'" (Revised 1992, page 11)

226.    New Century's breach of agreement and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued facilitation of New Century's breach of agreement severely injured and disrupted Plaintiff's quality of life, induced mental anguish

and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

227.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such breach of agreement and prays for relief as set forth below.

**COUNT IX**
**DEFENDANTS VIOLATED 15 U.S.C. § 1681**
**THE FAIR CREDIT REPORTING ACT**

228.    Since on or about August 1, 2004, Deutsche Bank and Carrington have reported inaccurate and invalidated information to the Credit Reporting Agencies ("CRAs"), including, but not limited to, Equifax, Experian and Transunion, in violation of the Fair Credit Reporting Act ("FCRA").

229.    According to the definition in 15 U.S.C. 1692(a)(4), the term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed."

230.    According to the definition in 15 U.S.C. 1692(a)(6), the term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

231.    As it has been well established in previous paragraphs and in light of the aforementioned definitions, New Century was not a "creditor" and Deutsche Bank and Carrington are nothing more than debt collectors subject to the FCRA.

232.   Deutsche Bank and Carrington are fully aware that there is no debt obligation. Yet, Deutsche Bank and Carrington continued to report inaccurate information to the CRAs, also in violation of the Privacy Act, defaming Plaintiff's character and harming her reputation.

233.   As per Section 609(a)(2) of the FCRA, Plaintiff is entitled to see the sources of the information and the CRAs are required to verify through the physical verification of the original signed consumer contract, any and all accounts posted on Plaintiff's credit report.

234.   The CRAs failed, refused or neglected to provide Plaintiff with an original consumer bilateral contract between New Century, Deutsche Bank or Carrington or any documentation authorizing the reporting of Plaintiff's personal information on her credit file and Plaintiff believes no such contract exists on file with the CRAs.

235.   Plaintiff has not seen or been presented with any evidence that an original consumer bilateral contract exists between New Century, Deutsche Bank or Carrington and the CRAs and believes no such evidence exists.

236.   As a result of New Century, Deutsche Bank and Carrington's knowing and reckless reporting to the CRAs, the CRAs continue to publish said adverse and false information on Plaintiff's credit file lowering Plaintiff's Fair Isaac Corporation ("FICO") score.

237.   New Century's libelous reporting to the CRAs, and, in furtherance of New Century's fraudulent acts, Deutsche Bank and Carrington's continued libelous reporting to the CRAs, severely injured and disrupted Plaintiff's quality of life, induced mental anguish and emotional distress, caused Plaintiff embarrassment, incited stress-related physical disorders, impacted Plaintiff's financial and commercial ability, impaired Plaintiff's credit worthiness, decreasing her FICO score, inflamed familial issues, interfered with Plaintiff's social and recreational interactions and impeded Plaintiff's professional endeavors.

238.    WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such violation of the FCRA pursuant to 15 U.S.C. § 1681 and prays for relief as set forth below.

### COUNT X
### PLAINTIFF'S CLAIM FOR RECOUPMENT
### PURSUANT TO SECTIONS 7-3-305 and 7-3-306
### OF THE UNIFORM COMMERCIAL CODE OF ALABAMA

239.    Plaintiff adopts and re-alleges all paragraphs above as if fully set forth herein.

240.    Plaintiff has possessory rights in the instrument and a property claim against the cash proceeds under the liability side of the ledger.

241.    Deutsche Bank, as the alleged Indenture Trustee, acting as custodian, initial paying agent and note registrar for the New Century Trust is legally liable for abuses committed by New Century; abuses, which, in furtherance of New Century's fraudulent acts, Deutsche Bank, in conjunction with Carrington, continued facilitating.

242.    Deutsche Bank is subject to a claim of Plaintiff's property or possessory right in the instrument or its proceeds, including a claim to rescind and to recover the instrument or its proceeds.

243.    New Century materially altered, illegally converted, and deposited Plaintiff's Note and was required to give Plaintiff a cash receipt for said deposit.

244.    In violation of GAAP, New Century failed to give Plaintiff a loan disbursement confirmation or cash receipt of said alleged loan in any form whatsoever.

245.    Plaintiff is entitled to recoupment and makes a claim for recoupment under Sections 7-3-305 and 7-3-306 of the Alabama Code for:  (1) the return of Plaintiff's "Note tendered at closing of escrow in this alleged mortgage transaction, Plaintiff being the Maker and Creator of said note; (2) transfer of any and all proceeds of Plaintiff's Note tendered at the

closing of escrow; or (3) set-off of the mortgage agreement, pursuant to the Financial Accounting Standards Board (FASB).

246. WHEREFORE, Plaintiff has an action for the recovery of damages occasioned by such Claim for Recoupment pursuant to Sections 7-3-305 and 7-3-306 of the Alabama Code and prays for relief as set forth below.

## CONCLUSION

**247. Fraud vitiates everything. Every transaction, including but not limited to, every transfer, every assignment, and every agreement, including any alleged settlement agreement(s), emanating from this fraudulent alleged mortgage transaction is "fruit of the poisonous tree."**

248. Defendants are jointly and severally responsible for severely injuring and disrupting Plaintiff's quality of life, inducing mental anguish and emotional distress, causing Plaintiff embarrassment, inciting stress-related physical disorders, impacting Plaintiff's financial and commercial ability, impairing Plaintiff's credit worthiness, inflaming familial issues, interfering with Plaintiff's social and recreational interactions and impeding Plaintiff's professional endeavors.

249. Defendants are jointly and severally responsible for ALL of Plaintiff's losses, costs, fees, and/or damages; including without limitations, emotional damages, punitive damages, inclusive of but not limited to: alienation of affection from: spouse, boy and/or girl "friend", friends, children, pets, co-worker(s), client(s), customer(s) and any and all other parties effected directly or indirectly and/or collaterally even if caused by Plaintiff's inability to deal emotionally with the financial issues; as said issues are and have been caused by Defendants' fraudulent acts.

250.    Plaintiff disavows and rebuts any and ALL presumptions made by this court, Defendants, and any and ALL other parties when said presumption may be detrimental to Plaintiff's interest and/or case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court, (1) enter a judgment in her favor and against Defendants on all ten (10) counts; (2) order Defendants to execute and record a Certificate of Acknowledgment in the Probate Office of Madison County, AL which acknowledges that the alleged debt secured by the purported Mortgage has been fully paid, or otherwise justly satisfied or discharged; (3) order Defendants to execute and record a Certificate of Discharge in the Probate Office of Madison County, AL which discharges the alleged debt secured by the purported Mortgage, the purported Mortgage, having been fully paid, otherwise justly satisfied or discharged; (4) order Defendant to execute and record or cause to be recorded a DEED OF FULL RECONVEYANCE OF ANY AND ALL ENCUMBERED INTERESTS, RELEASING LENDER'S ALLEGED LIEN FROM SUBJECT PROPERTY AND RECONVEYING, WITHOUT WARRANTY, TO THE LIVING WOMAN LEGALLY ENTITLED HERETO, i.e. THE EXECUTRIX, THE ESTATE NOW HELD BY IT THEREUNDER, under purported Mortgage recorded in the Probate Office of Madison County, AL, including any and all purported Mortgages recorded at any time during this fraudulent credit transaction pertaining to the Estate Property, and said Note, and any and all associated Notes and/or Liens pertaining to the Estate Property and purported Mortgage(s) shall be marked paid and justly satisfied; (5) order Defendants to deliver or cause to be delivered to THE EXECUTRIX certified copies of recorded certificates and DEED OF FULL RECONVEYANCE via U.S.P.S. Registered Mail at the subject property. Defendants incurring any and all fees

relating to the release and/or reconveyance, including, but not limited to the preparation, execution, recordation or delivery; (6) order Defendants to contact any and all credit bureaus, including but not limited to, Equifax, Experian and Trans Union, to delete any and all records connected to this fraudulent mortgage transaction from July 23, 2004; (7) order Defendants to return Plaintiff's down payment and all payments made, including late and other fees and interest on the down payment and payments and on Plaintiff's original escrow; (8) award Plaintiff treble damages of the unjust enrichment enjoyed by New Century, Deutsche Bank and Carrington for the theft and sale of Plaintiff's Note pursuant to an independent assessment of the Life of Loan accounting; (9) award Plaintiff punitive damages of two hundred (200) times the treble damages of the unjust enrichment enjoyed by New Century, Deutsche Bank and Carrington for the theft and sale of Plaintiff's Note; and (10) award Plaintiff an amount to be proven at trial, such further relief deemed equitable and just, including all costs and fees.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable by a jury.

Dated: January 11, 2022

Respectfully submitted,
Without Prejudice 1-308/1-207
All Rights Reserved.
govern yourself accordingly.

By: executrix _Wanda D. Trotman_
Executrix Office.
WANDA DENISE   MADDEN, Estate.
Nation Alabama.
c/o General-Post Office.
Wall Triana Highway – three four zero eight.
Huntsville. Trotman Province.
United States Minor, Outlying Islands.
Near. [35813-9998]